IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James J. Hubbs,<br><br>    Petitioner,<br><br>vs.<br><br>Thomas C. Horne, et al.<br><br>    Respondents. | No. CV-10-1318-PHX-GMS (LOA)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner, a state prisoner on release[1] pending appeal, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his driving under the influence ("DUI") conviction sustained in the Arcadia Biltmore Justice Court of Maricopa County, in Phoenix, Arizona. (Doc. 9) Respondents have filed an Answer, doc. 20, to which Petitioner has replied, doc. 24. For the reasons below, the Petition should be denied.

**I. Factual and Procedural Background**

    **A. Charges, Trial, and Sentencing**

On December 10, 2006, the State of Arizona issued Petitioner a civil/criminal traffic ticket, charging him with improper position; failure to yield the right of way; driving under the influence while impaired to the slightest degree, in violation of A.R.S. § 28-

---

[1] Custody under § 2254 is jurisdictional. The Supreme Court has held that a person released pending execution of a sentence is "in custody" for purposes of § 2254. *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973). In this case, the justice court has stayed Petitioner's sentencing pending resolution of the habeas corpus proceedings. (Respondents' Exh. L) There is no dispute that Petitioner is "in custody." (Docs. 9, 20 at 4-5)

1381(A)(1); DUI with blood alcohol content ("BAC") of .08 or more within two hours of driving, in violation of A.R.S. § 28-1381(A)(2); and extreme DUI with BAC .15 or more within two hours of driving, in violation of A.R.S. § 28-1382(A). (Respondents' Exhs. A, E) The State later dismissed the BAC counts based on its inability to disclose "Intox Data." The State indicated that it would not use breath-test evidence at trial. (Respondents' Exh. B)

Petitioner's case proceeded to a jury trial[2] on the charge of DUI while impaired to the slightest degree, in violation of A.R.S. § 28-1381(A)(1). On February 12, 2008, the jury found Petitioner guilty as charged. (Respondents' Exh. C) On June 18, 2008, the justice court suspended imposition of sentence and placed Petitioner on probation for three years. (Respondents' Exh. D) As a condition of probation, the justice court sentenced Petitioner to ten days in jail, with nine days suspended upon completion of alcohol screening and counseling; and payment of fines and assessments totaling $1,670. (*Id.*) The court also ordered that Petitioner install an alcohol interlock detecting device on his car. (*Id.*)

### B. Direct Appeal

Petitioner timely Petitioned the Arizona Superior Court for review, raising the following claims:

> 1. Did the prosecution improperly, unfairly, and intentionally misstate the law to the jury regarding the relevance of Horizontal Gaze Nystagmus [HGN] testing in order to gain tactical advantage over [Petitioner] during closing arguments by stating that it meant, first "cues of impairment," then "cues" of "intoxication," over Defense objections?
>
> 2. Did the trial court abuse its discretion by not correcting and directing the prosecutor after Defense objections to the State's closing argument that HGN meant the [Petitioner] could have had a neurological dysfunction, one cause of which could have been alcohol ingestion?
>
> 3. Should the case be dismissed with prejudice, jeopardy having attached, the prosecution having ignored case law and acted in bad faith, in arguing that HGN meant impairment and intoxication?
>
> 4. Was [Petitioner] prejudiced by having an electronic record that did not audibly record all side bars with the Court?

---

[2] Justice of the Peace Michael Orcutt presided.

(Respondents' Exh. E at 6) After the matter was fully briefed, on July 24, 2009, the court[3] affirmed the judgment of the justice court ruling that the HGN evidence and closing argument were consistent with the trial court's order and controlling legal authority. (Respondents' Exh. G) The appellate court remanded the matter to the justice court for all further proceedings. (*Id.*) Petitioner filed a motion for reconsideration, which the court denied on September 10, 2009. (Respondents' Exh. H; doc. 24, Exh. 7)

### C. Special Action Proceedings

Pursuant to Rule 13(b), Arizona Superior Court Rules of Appellate Procedure - Criminal, no further appeal may be taken from a limited jurisdiction court. Thus, on November 16, 2009, Petitioner filed a special action in the Arizona Court of Appeals, pursuant to the Arizona Rules of Procedure - Special Action, seeking a stay of the remand and reversal of Petitioner's conviction. (Respondents' Exh. I) The Arizona Court of Appeals "decline[d] to accept jurisdiction." (Respondents' Exh. J) Likewise, the Arizona Supreme Court declined review of the special action. (Respondents' Exh. K) On July 22, 2010, the justice court granted Petitioner's motion to stay execution of sentence. (Respondents' Exh. L)

### D. Habeas Corpus Proceeding

On July 23, 2010, Petitioner, through counsel, filed a timely[4] Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1) He subsequently filed an Amended Petition, doc. 9, raising the following claim:

> Petitioner was denied due process of law guaranteed by the United States Constitution, by the State being able to argue to the jury at the close of evidence, that six cues from a Horizontal Gaze Nystagmus (HGN) test scientifically mean[] alcohol impairment and intoxication when the breath alcohol test reading had been excluded from evidence, when the alleged HGN evidence was not in the trial record, was contrary to the evidence that was in the record, had no scientific basis, and was argued after the State had represented on the record to Petitioner that it would not attempt to introduce such evidence at trial.

---

[3] The Honorable Robert C. Houser presided.

[4] Respondents concede that Petitioner filed his Petition "well within the 1-year limitations period." (Doc. 20 at 5-6) (citing 28 U.S.C. § 2233(d)(1)).

(Doc. 9-1 at 2) Although Petitioner presents several variations of his due process claim, they all stem from the HGN evidence and the prosecution's closing argument regarding that evidence. (*Id.*) Respondents argue that Petitioner did not exhaust his federal due process claims and that such claims are procedurally barred from federal habeas corpus review. In the alternative, Respondents argue that Petitioner's claims lack merit. (Doc. 20) Petitioner contends that his due process claim is properly before this Court on habeas corpus review and that he is entitled to relief. (Doc. 24) In a separate motion, Petitioner requests oral argument. (Docs. 31, 34) Petitioner's request for oral argument does not cite the habeas corpus statute governing evidentiary hearings. Rather, it is a one-sentence motion, stating, "Petitioner/Defendant requests oral argument be schedule (sic) in this matter." (Doc. 31) Thus, the Court finds that Petitioner merely requests an opportunity to orally present to the Court the same arguments he raises in his Petition and Reply. The Court finds that the briefing in this matter is sufficient and oral argument will not assist the Court. *Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999); *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991). Thus, Petitioner's motion for oral argument is denied.

**II. Exhaustion and Procedural Bar**

Respondents argue that Petitioner failed to exhaust his state remedies on his due process claims because he did not fairly present those claims to the Arizona Court of Appeals. Respondents argue that federal habeas corpus review is procedurally barred. Petitioner disputes that assertion.

**A. Relevant Legal Principles**

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted available state-court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). When seeking habeas corpus review, Petitioner bears the burden of showing that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the

merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct review or in a petition for post-conviction relief. *See*, *Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2004); *Crowell v. Knowles,* 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

To result in exhaustion, claims must be fairly presented. That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his federal claim. *Picard v. Connor*, 404 U.S. 270, 276-77 (1971). A claim has been fairly presented if petitioner has described in state court both the operative facts and the federal legal theory upon which he bases his claim in federal court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (stating that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1205 (9th Cir. 2005) (stating that "[t]o exhaust a federal constitutional claim in state court, a petitioner has to have, at least, explicitly alerted the court that she was making a federal constitutional claim."). General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish fair presentation of a federal constitutional claim. *Castillo*, 399 F.3d at 1002 (observing that "[e]xhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."); *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such

as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Nether-land*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the petition or brief filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27. In summary, a "petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted." This type of exhaustion is often referred to as "procedural default" or "procedural bar." *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 731-32. There are two categories of procedural default. First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court. *Nunnemaker*, 501 U.S. at 802-05. Second, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." *Teague v. Lane*, 489 U.S. 288, 297-99 (1989).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.* The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual

or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(e)(2)(B).

**B. Application of Law to Petitioner's Claims**

Although Petitioner presents several different variations on his claim, he essentially argues that his Fifth, Sixth, and Fourteenth Amendment rights to Due Process were violated because:

> the State [was] able to argue to the jury at the close of evidence, that six cues from a Horizontal Gaze Nystagmus (HGN) test scientifically mean[] alcohol impairment and intoxication when the breath alcohol test readings had been excluded from evidence, when that alleged HGN evidence was not in the trial record, was contrary to evidence that was in the record, had no scientific basis, and was argued after the State had represented on the record to Petitioner that it would not attempt to introduce such evidence at trial.

(Doc. 9-1 at 2) Respondents assert that Petitioner's federal due process claim is procedurally defaulted because Petitioner did not fairly present a federal due process claim to the State courts. As set forth below, the Court agrees.

To "fairly present" his federal claim to the state courts, Petitioner must have alerted the state courts that he was asserting a claim under the United States Constitution. *Duncan*, 513 U.S. at 365-66. Mere similarity between a claim of state and federal error does not establish exhaustion. *Id.* at 366. Additionally, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion. *See*, *Gray*, 518 U.S. at 162-63.

Here, Petitioner did not fairly present a federal due process claim related to the

alleged prosecutorial misconduct and the HGN evidence to the state courts. Before trial, Petitioner filed motions *in limine* to preclude the following: (1) opinion testimony regarding whether Petitioner committed the crime charged, "*Fuenning*[5] testimony"; (2) expert testimony on the effects of alcohol on the human body; (3) results of a Vertical Gaze Nystagmus (VGN) test; (4) testimony quantifying alcohol concentration from field sobriety performance; and (5) testimony quantifying alcohol concentration from HGN testing. (Respondents' Exhs. M, N) The justice court granted the motions *in limine* with respect to the *Fuenning* testimony and VGN evidence, but denied the motions in all other respects. (Respondents' Exh. O)

The parties agree that, under Arizona law, in the absence of a chemical test of a DUI suspect's blood or breath, HGN test results are admissible only for the purpose of permitting a police officer to testify that HGN results indicate possible neurological dysfunction, one cause of which could be alcohol ingestion. *See*, *State ex. rel. Hamilton v. City Court of City of Mesa (Lopresti)*, 799 P.2d 855, 859-60 (Ariz. 1990). During a February 6, 2008 status conference in Petitioner's case, the parties discussed HGN results. Petitioner argued that the State was barred from eliciting testimony other than that HGN results indicated possible neurological dysfunction. (Respondents' Exhs. N, Q, R) The justice court ruled that the State could present HGN evidence to show impairment or that Petitioner was under the influence, but could not offer HGN testimony that would quantify a BAC level. (Respondents' Exh. P)

Petitioner moved to stay his trial in order to file a special action, challenging the court's order regarding the HGN evidence, but ultimately did not file such an action. (Respondents' Exh. Q) Petitioner asserts that he did not file a special action because he relied on the prosecution's assurance that it would "limit elicited testimony from the officer who conducted the HGN to the conclusion that, based on his training and experience, results

---

[5] *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (Ariz. 1983).

indicated possible neurological dysfunction, one cause of which could be alcohol ingestion." (Respondents' Exhs. E, R at 3)

During trial, Tempe Police Officer John Butler testified that, on December 10, 2006, he was working "a part of a multi-agency [DUI] task force" at 44th Street and Camelback Road in Phoenix, Arizona. (Respondents' Exh. S at 88, 92) While Officer Butler was driving in a marked police car, he observed Petitioner's vehicle make "a right, wide-sweeping turn right turn across all three lanes of traffic to the far left lane." (*Id*. at 93-94) Officer Butler followed Petitioner and observed his vehicle "move back left and right within its lane," and saw "the right side tires hit the lane markers. On one occasion [the vehicle] almost hit the center median, and another occasion . . . the vehicle crossed over the lane markings designating [a] left turn lane." (*Id*. at 96) Officer Butler testified that "weaving in and out of your lane or back and forth within your lane," are "cues" of DUI "identified in his training." (*Id*. at 97) Based on Petitioner's driving, Officer Butler stopped Petitioner in a parking lot. (*Id*. at 99) Petitioner exited his vehicle and walked, in a "staggering motion" "in a real wide arc" toward Officer Butler. (*Id*. at 100-01) Officer Butler observed that Petitioner's "eyes were bloodshot and watery," "he had a circular sway," "his speech was slurred," and "he had a distinct odor of alcoholic beverage on his breath." (*Id*. at 102) Officer Butler explained that each of those things is a "cue" of possible impairment. (*Id*. at 102-03) After Petitioner told Officer Butler he had consumed "three to four glasses of wine," Officer Butler conducted several field sobriety tests. (Respondents' Exh. S at 104) During those tests, Petitioner exhibited multiple "cues" of DUI. (*Id*. at 108-113) (noting that Petitioner staggered as he walked, lost his balance when he turned, could not stand on one leg for 30 seconds, "opened his eyes periodically" when he was supposed to keep them closed for 30 seconds, and "jumbled with his fingers and mis-counted" on one hand during the "finger count" test). Officer Butler also administered the HGN test. (*Id*. at 113) He explained that HGN is the "involuntary jerking of the eyes as your eyes gaze from side to side." (*Id*.) Officer Butler testified that "alcohol detoxication" is one possible explanation for HGN." (*Id*. at 114) He also testified that a small percentage "of the population has a

1 natural nystagmus which looks different." (*Id.*) Officer Butler further testified that before
2 administering the HGN test, he asked Petitioner about his health, injuries, medications, and
3 vision to rule out other factors that might impact his performance on test. (*Id.* at 116-118)
4 He testified that Petitioner exhibited all six cues of HGN. (*Id.* at 115)

During closing argument, the prosecutor described HGN results as "cues of impairment." (Respondents' Exh. S at 194-97)  Petitioner objected to the prosecutor's arguments.  The prosecutor then clarified that HGN results "indicate possible neurological dysfunction, one of which is intoxication." (*Id.*)  Petitioner moved for a mistrial on the ground that the prosecutor improperly categorized HGN results as indicative of alcohol impairment or intoxication. (*Id.* at 195)  The court stated that the HGN issue could be "cleared up." (*Id.* at 196)  Thereafter, during closing argument, defense counsel argued that the observation of the six cues during HGN testing does not establish impairment. (*Id.* at 208-10)

On direct appeal, Petitioner argued that the prosecutor engaged in misconduct by misstating the law on HGN categorization to the jury. (Respondents' Exh. E)  Although Petitioner stated that he was denied due process of law as guaranteed by the federal constitution, his argument was based on state statutes and state case law. (*Id.* at 2-8)  Petitioner's argument was largely based on the Arizona cases *Lopresti*, 799 P.2d at 859-60 and *Pool v. Superior Court*, 677 P.2d 261 (Ariz. 1984).  The state court considered Petitioner's claim solely on the basis of state law.  Based on Arizona law, the state court found that the prosecutor's closing argument merely summarized the evidence, suggested inferences that could be drawn therefrom, was not improper, and did not require any intervention from the court to correct an error. (Respondents' Exh. G at 3)  Petitioner filed a motion for reconsideration in which he relied exclusively on state law to support his argument. (Doc. 25, Exh. 7) The court summarily denied the motion for reconsideration.

In his Reply in support of his Petition, Petitioner asserts that his references to the federal due process clause in his appellate brief were sufficient to fairly present a federal

claim to the State court.[6] (Doc. 24) The Court disagrees. Although Petitioner cited the federal due process clause several times, that was the extent of his federal argument. Indeed, although he presented a claim of prosecutorial misconduct, he did not cite the controlling Supreme Court precedent. The body of his brief in the State court cited only Arizona statutes and cases. (Respondents' Exh. E) In turn, the court addressed Petitioner's claims regarding the HGN evidence and related closing argument solely on state-law grounds. When Petitioner sought reconsideration of the court's ruling, he cited only state law and did not argue that the court had failed to consider his federal claim. (Doc. 25, Exh. 7)

Petitioner's drive-by citation to the federal Due Process Clause did not fairly present a federal claim to the state court. Petitioner's general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are not sufficient to fairly present a federal constitutional claim. *Lyon*s, 232 F.3d at 669; *Shumway*, 223 F.3d at 987. Accordingly, Petitioner's due process claims are procedurally defaulted and barred from federal habeas review.

Because Petitioner's claims are procedurally defaulted, federal habeas corpus review is only available if he can establish cause and prejudice or a fundamental miscarriage of justice. To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules.

---

[6] Petitioner also argues that his citations to federal law in his petitions for special action were sufficient to exhaust a federal claim. Both the Arizona Court of Appeals and the Arizona Supreme Court declined to accept jurisdiction of the petitions for special action. Moreover, presenting his claims in a petition for special action to the Arizona Court of Appeals or Arizona Supreme Court did not satisfy the exhaustion requirement. *See*, *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding that raising a claim in a procedural context in which the merits would not be considered absent special and important reasons does not constitute fair presentation for purposes of exhaustion); *State ex rel. Romley v. Superior Court*, 198 Ariz. 164, 166-67, 7 P.3d 970, 972-3 (Ariz.Ct.App. 2000) (stating that acceptance of jurisdiction of a petition for special action is discretionary and appropriate when there is no equally plain, speedy or adequate remedy available by appeal, or when the case presents a narrow question of law of statewide importance).

*Murray,* 477 U.S. at 488-492. The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* Prejudice is actual harm that results from the constitutional violation or error. *Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984). Where petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray,* 477 U.S. 527, 533 (1986).

Petitioner offers no argument to overcome the procedural bar. (Doc. 24) Because Petitioner has not established any basis to excuse his procedural default, Petitioner's claims are barred from federal habeas corpus review.

**III. Merits Review**

Even if Petitioner's due process claims were properly before the Court, they lack merit as discussed below. *Clark v. Ricketts*, 958 F.2d 851, 856 (9th Cir. 1991) (stating that even where a claim is procedurally barred, the court may deny a frivolous claim on the merits.)

**A. Standard of Review**

A federal court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in State court" unless the state court's decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Carey v. Musladin*, 549 U.S. 70 (2006); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Mitchell v. Esparza*, 540 U.S 12, 14-15 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Accordingly, the Ninth Circuit has acknow-

ledged that it cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explained its ruling nor cited United States Supreme Court authority, the reviewing federal court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Early v. Packer*, 537 U.S. 3, 8 (2003). The United States Supreme Court has expressly held that citation to federal law is not required and that compliance with the habeas statute "does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* (emphasis in original).

A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell*, 540 U.S at 14 (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "It is not enough that a federal habeas court, in its independent review of the legal question," is left with the "firm conviction" that the state court ruling was "erroneous." *Andrade*, 538 U.S. at 75. Rather, the petitioner must establish that the state court decision is "objectively unreasonable." *Middleton v. McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

**B. Due Process Claim/Prosecutorial Misconduct**

To prevail on a claim of prosecutorial misconduct, Petitioner must show that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction

- 13 -

1 a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974) (finding that the prosecutor's remark during closing argument regarding his opinion of petitioner's guilt and petitioner's motive in standing trial did not deny petitioner due process where the comments were isolated and the judge gave curative instructions.) It is not enough that the argument is improper. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the court must consider the prosecutor's allegedly improper comments in the context of the entire trial to determine whether they resulted in a denial of due process. *DeChristoforo*, 416 U.S. at 645. A reviewing court draws the least "damaging interpretations" from a prosecutor's argument. *Id.* at 647.

During trial, the State offered the following evidence. On the night of the incident, Officer Butler was working in a marked police car as part of a DUI task force. He observed Petitioner's vehicle make "a right, wide-sweeping turn right across all three lanes of traffic to the far left lane ,"weave in his lane," "hit the lane markers" with his right-side tires, "almost hit the center median," and "cross[] over the lane markings designating [a] left turn lane." (Respondents' Exh. S at 94-96) After he stopped Petitioner, Officer Butler observed Petitioner exit his vehicle and walk, in a "staggering motion" "in a real wide arc" toward Officer Butler. (*Id*. at 100-01) Officer Butler observed that Petitioner's "eyes were bloodshot and watery," "he had a circular sway," "his speech was slurred," and "he had a distinct odor of alcoholic beverage on his breath." (*Id*. at 102) Petitioner told Officer Butler he had consumed "three to four glasses of wine." (*Id*. at 104) Officer Butler conducted several field sobriety tests before conducting the HGN test. (*Id.* at 104) During those tests, Petitioner exhibited multiple "cues"' of DUI. (*Id.* at 108-113) (noting that Petitioner staggered as he walked, lost his balance when he turned, could not stand on one leg for 30 seconds, "opened his eyes periodically" when he was supposed to keep them closed for 30 seconds, and "jumbled with his fingers and mis-counted" on one hand during the "finger count" test). Officer Butler also administered the HGN test. (*Id.* at 113)

During closing argument, the prosecutor described HGN results as "cues of impairment." (*Id.* at 194-97) Petitioner objected to the prosecutor's arguments. The prosecutor then clarified that HGN results "indicate possible neurological dysfunction, one of which is

- 14 -

intoxication." (*Id.*) Petitioner moved for a mistrial on the ground that the prosecutor improperly categorized HGN results as indicative of alcohol impairment or intoxication. (*Id*. at 195) The court stated that the HGN issue could be "cleared up." (Respondents' Exh. S at 196) Thereafter, during closing argument, defense counsel argued that the observation of the six cues during HGN testing does not establish impairment. (*Id*. at 208-10)

On direct appeal, the state court found that the prosecutor's closing argument merely summarized the evidence, suggested inferences that could be drawn therefrom, was not improper, and did not require any intervention from the court to correct an error. (Respondents' Exh. G at 3) On habeas corpus review, this Court is bound by the state court's conclusion that the HGN evidence was admissible under Arizona law, and that the related argument was proper. *See*, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*); *Murtishaw v. Woodford*, 255 F.3d 926, 956 (9th Cir. 2001).

Additionally, under state and federal law, prosecutors are given wide latitude in closing argument to comment on the evidence and argue all reasonable inferences therefrom. *State v. Moody*, 94 P.3d 1119, 1159 (Ariz. 2004); *State v. McDaniel*, 665 P.2d 70, 79 (Ariz. 1983); *Menendez v. Terhune*, 422 F.3d 1012, 1037 (9th Cir. 2005) (holding that prosecutor may argue reasonable inferences from the evidence presented) (citing *Young*, 470 U.S. at 8 n. 5); *Shaw v. Terhune*, 380 F.3d 473, 480 (9th Cir. 2004) (holding that a prosecutor may ask the jury to draw inferences from the evidence which the prosecutor believes in good faith to be true).

Moreover, even if the prosecutor's argument regarding the HGN evidence was improper, Petitioner has not shown that it rendered his trial fundamentally unfair. The HGN evidence and related argument was just one piece of the evidence the State offered against Petitioner. As discussed above, sufficient other evidence was offered that Petitioner was impaired. Petitioner has not shown that the prosecutor's argument infected the trial with unfairness such that Petitioner was denied due process. *DeChristoforo*, 416 U.S. at 643.

Additionally, the core of Petitioner's claims is a challenge to the admissibility of HGN evidence under Arizona law. State law evidentiary rulings are not cognizable on federal habeas corpus review. Title 28 U.S.C. § 2254(a) sets forth the scope of review for federal

habeas corpus petitions:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in *violation of the Constitution or laws or treaties of the United States*.

28 U.S.C. § 2254(a) (emphasis added). Accordingly, "[a] habeas petition must allege the petitioner's detention violates the constitution, a federal statute, or a treaty." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989), *cert. denied, Franzen v. Deeds* 493 U.S. 1012 (1989) (citing 28 U.S.C. § 2254(c)(3)). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also*, *Gilmore v. Taylor*, 508 U.S. 333, 348-49 (1993) (stating that "mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas."). The purpose of habeas proceedings under § 2254 is to ensure that state convictions satisfy federal constitutional requirements applicable to states. *Burkey v. Deeds*, 824 F.Supp. 190, 192 (D.Nev. 1993). A habeas petitioner cannot "transform a state law issue into a federal one merely by asserting a violation of due process." *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (quoting *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996)).

Although Petitioner alleges violations of the Fifth and Fourteenth Amendments to the United States Constitution, his conclusory citations do not transform his state-law claims into federal claims. *Poland*, 169 F.3d at 584. Petitioner challenge the application of state evidentiary law, and thus his claims are not cognizable on federal habeas corpus review. 28 U.S.C. § 2254; *McGuire*, 502 U.S. at 67-68; *Jackson v. Ylst*, 921 F.2d 882 (9th Cir. 1990) (federal court has no authority to review state application of state law). The failure to comply with state rules of evidence is not a sufficient basis for granting federal habeas relief on due process grounds. *See Henry v.Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-920 (9th Cir. 1991). Rather, federal habeas relief is available on the basis of evidentiary error only if the admission of the evidence was so arbitrary or prejudicial that it rendered the trial fundamentally unfair. *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998); *Jeffries v. Blodgett*, 5 F.3d 1180, 1193 (9th Cir. 1993). "Only if there are no permissible inferences the

jury may draw from the evidence can its admission violate due process." *Jammal*, 926 F.2d at 920; *McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993); *see also*, *Estelle v. McGuire*, *supra*, 502 U.S. at 70 (where the challenged evidence is relevant to an issue in the case, its admission cannot be said to have violated the defendant's due process rights).

**IV. Summary**

In conclusion, Petitioner is not entitled to habeas corpus relief. His claims are unexhausted and procedurally barred. Moreover, even if Petitioner's claims were properly before his Court, he has not shown that the State court's rejection of his claims was based on an unreasonable determination of the facts, or that it is contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, doc. 9, be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Petitioner's request for oral argument, doc. 31, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation

by the District Court without further review. *See*, *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 11th day of October, 2011.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge