**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Hubbs, | ) No. CV-10-1318-PHX-GMS |
| Petitioner, | ) |
| | ) **ORDER** |
| vs. | ) |
| | ) |
| Thomas Horne, et al., | ) |
| | ) |
| Respondants. | ) |
| | ) |
| | ) |

Pending before the Court are an Amended Petition for Writ of Habeas Corpus filed by Petitioner James J. Hubbs and a Motion for Hearing or Conference. (Docs. 9, 31). Magistrate Judge Lawrence O. Anderson has issued a Report and Recommendation ("R & R") recommending that the petition be denied because it is procedurally defaulted and because it would fail on the merits in any event, and recommending that the motion for a hearing be denied as well. (Doc. 36). Petitioner has filed objections to the R & R. (Doc. 37). Because objections have been filed, the Court will review the petition de novo. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). For the reasons stated below, the petition is denied.

**BACKGROUND**

On December 10, 2006, Officer John Butler of the Phoenix Police Department observed an F-150 truck make a wide right turn from traveling southbound on 44th Street to

traveling westbound on Camelback Road in Phoenix, crossing three lanes of traffic as it did so. (Doc. 20, Ex. S at 94).[1] He continued to follow the vehicle, and observed it waver in its lane and nearly hit the center median. (*Id.* at 96). At 40th Street, he observed as the truck made a left hand turn in front of an oncoming vehicle, then pulled into a parking lot in which a half-dozen cars remained. (*Id.* at 99–100). Officer Butler pulled into the parking lot, but before he could get out of his car, Petitioner James Hubbs exited the truck and began to approach the officer. (*Id.* at 100). As Hubbs walked towards him, Officer Butler observed that Hubbs walked in "a real wide arc," and that "he was swaying and staggering." (*Id.* at 101). Hubbs's eyes were "bloodshot and watery," he "slurred his speech when he conversed," and "he had a distinct odor of alcoholic beverage on his breath." (*Id.* at 102).

Officer Butler conducted a number of field sobriety tests on Petitioner. These tests included the "walk and turn," the "one leg stand," the "Romberg Modified Test," and, most relevant to this petition, a test for Horizontal Gaze Nystagmus ("HGN"). (Doc. 20, Ex. S at 106, 109, 110, 113). Police officers test for HGN by waving a pen in front of a person's face and determining, among other things, whether or not "the eyes just move smoothly back and forth" or not. (Doc. 20, Ex. S at 114). As Officer Butler later explained at trial, one cue of a positive result of the HGN test is that "the eyes will continue to jerk, it'll, and they, um, it just keeps going inward." (*Id.*). In Arizona, the results of an HGN test may not be admitted to support the proposition that a person was intoxicated when the test was administered. Instead, they may only be admitted "for the purpose of permitting the officer to testify that, based on his training and experience, the results indicated possible neurological dysfunction, one cause of which could be alcohol ingestion." *State ex. rel. Hamilton v. City Ct. of the City of Mesa (Lopresti)*, 165 Ariz. 514, 518–19, 799 P.2d 855, 859–860 (1990). After conducting the field sobriety tests and administering a breathalyzer, Officer Butler arrested Petitioner for

---

[1] In the ticket he wrote that evening, Officer Butler wrote that the incident took place at 44th Street and Indian School, but at the later trial he confirmed that he had revisited the location of the incident and it had taken place on Camelback Road. (Doc. 20, Ex. A, Ex. S at 92)

driving while impaired by alcohol to the least degree, in violation of Arizona Revised Statutes ("A.R.S.") § 28-1381(A), having a breath alcohol concentration of .08 or greater within two hours of driving in violation of A.R.S. § 28-1382(A), and extreme DUI, having a breath alcohol concentration of .15 or greater within two hours of driving. (Doc. 9-1 at 1).

Prior to trial, Petitioner requested disclosure of the performance records of the Intoxilyzer 8000, the device Officer Butler used to test Petitioner's blood alcohol level. Rather than provide the results, the state stipulated to the dismissal of the blood alcohol level charges and stated it would not introduce breath test evidence at trial. (Doc. 20, Ex. B). Petitioner then moved to exclude the HGN evidence altogether, and the court ruled that "HGN testimony is allowable to show impairment or that defendant was under the influence." (Doc. 25, Ex. 1). Arguing that this ruling conflicted with the standard in *Lopresti*, Petitioner moved to stay the trial in order to file a special action regarding the HGN testimony. (Doc. 25, Ex. 2). In response, the state wrote that it "has no objection now, nor has it ever objected, to limiting direct testimony regarding HGN to language consistent with *Lopresti*" and continued that it "does not intend to elicit conclusory testimony from any witness that observations made during HGN show impairment or that the defendant was 'under the influence.'" (Doc. 25, Ex. 3). The parties proceeded to trial on the charge of driving while impaired by alcohol to the slightest degree, in violation of A.R.S. § 28-1381(A)(1).

At trial, Officer Butler testified about following Petitioner's truck, observing him in the parking lot, and administering field sobriety tests. After describing how he administered the HGN test, the trial proceeded as follows:

> **State:** Ok, um, is alcohol detoxification [*sic*] one possible explanation for Horizontal Gaze Nystagmus?
> **Butler:** Um, yes.
> (Doc. 20, Ex. S at 114).

Officer Butler was then asked about other possible causes of HGN, and replied that people who have been spun around, or people who have been watching rapidly moving objects may display signs of HGN. (*Id.* at 115). His only statement under direct examination

relating to HGN and alcohol was that a positive HGN could be the result of "detoxification," which as Petitioner notes, refers to the removal of toxins or alcohol from the body. When Butler was under cross-examination, however, the following exchange took place:

> **Defense:** It would be a fair statement that if there are six cues of HGN, that that might indicate a possible neurological dysfunction, one cause of which, of which could be alcohol ingestion?
> **Butler:** That is a correct statement.
> (Doc. 20, Ex. S at 133).

In his summation, the prosecutor made the following statement: "And in fact on the HGN, the one that the criminalist testified was the most accurate of all the tests, there are six possible keys of impairment, the Defendant exhibited all six." (Doc. 20, Ex. S at 194). Defendant objected, arguing that the description violated *Lopresti*, stating at sidebar that, "the only thing the officer can testify to based on his training [and] experience, and this is what the officer testified to (inaudible), based on his training [and] experience, results indicate a possible neurological dysfunction (inaudible) but impairment, one cause of which could be alcohol ingestion, that's it." (Doc. 20, Ex. S at 195). The judge stated that "I think it can probably be cleared up (inaudible) on both sides, so (inaudible)" and the prosecutor continued. (Doc. 20, Ex. S at 196). The prosecutor then made the following statement:

> I've been told that [the] weapon of lawyers is words, so I wanted to make sure that I've, I've spoken correctly to you. The HGN, as you heard testified to by the officers, measures, there are six cues, uh, that indicate possible neurological dysfunction, one of which is intoxication.
> (Doc. 20, Ex. S at 196).

The Defense again objected to the prosecutor's failure to abide by the language of *Lopresti*, and at sidebar, when challenged about whether he said "impairment" or "ingestion," the prosecutor stated, "I did say alcohol ingestion," when in fact he said "intoxication." (Doc. 20, Ex. S at 197). The judge allowed the closing argument to continue, and when Petitioner filed a motion for a mistrial, the judge stated "certainly there's, uh, some latitude given in closing arguments, and . . . I don't think you've gone beyond the bounds of that." (Doc. 20, Ex. S at 203). The judge did not issue any statement to the jury regarding the prosecutor's description of HGN, and the jury convicted petitioner. (Doc. 20, Ex. C). On June 18, 2008,

the justice court suspended imposition of sentence and placed Petitioner on probation for three years, under the condition that he spend ten days in jail, pay fines totaling $1,670, and have an alcohol interlock detecting device installed on his car. (Doc. 20, Ex. D).

Petitioner filed a timely appeal to the Superior Court, in which he presented the following four issues:

> 1. Did the prosecution improperly, unfairly, and intentionally misstate the law to the jury regarding the relevance of Horizontal Gaze Nystagmus testing in order to gain tactical advantage over the Defendant during closing arguments by stating that it meant, first "cues of impairment," then "cues" of "intoxication" over Defense objections?
>
> 2. Did the trial court abuse its discretion by not correcting and directing the prosecutor after Defense objections to the State's closing argument that HGN meant the Defendant could have had a neurological dysfunction one cause of which could have been alcohol ingestion.
>
> 3. Should the case be dismissed with prejudice, jeopardy having attached, the prosecution having ignored case law and acted in bad faith, in arguing that HGN meant impairment and intoxication?
>
> 4. Was Defendant prejudiced by having an electronic record that did not audibly record all side bars with the Court?

(Doc. 20, Ex. E).

Although the appeal focuses primarily on state law issues, it cites to *Berger v. United States*, 294 U.S. 78, 88 (1935) in arguing that the prosecutor overstepped his authority. ("[W]hile he may strike hard blows, he is not at liberty to strike foul ones"). In affirming the judgment of the justice court, the superior court wrote that "[c]losing arguments must be based upon evidence in the record, but counsel may argue the reasonable inferences that can be drawn from the evidence and suggest ultimate conclusions." (Doc. 20, Ex. G at 2). The Court concluded that "[t]he prosecutor's use of the word 'intoxication' rather than 'ingestion' in his closing, which Appellant contends was unfairly prejudicial, did no more than summarize the evidence and suggest the inferences that could be drawn from it." (Doc. 20, Ex. G at 3). Petitioner's motion for reconsideration was denied on September 20, 2009. (Doc. 20, Ex. H).

Since the Arizona Superior Court Rules of Appellate Procedure prohibit further appeal from a limited jurisdiction court, Petitioner filed a special action in the Arizona Court of Appeals. In the motion for a special action, he again cited to *Berger* and, unlike in his direct appeal to Superior Court, included the fact that Officer Butler had only testified that HGN can be a sign of "detoxification" in his direct testimony. (Doc. 20, Ex. I at 7). The Court of Appeals declined to accept jurisdiction. (Doc. 20, Ex. J). The Arizona Supreme Court declined review of the motion for a special action. (Doc. 20, Ex. K). On June 22, 2010, the justice court stayed Petitioner's sentence pending the filing of a Habeas Corpus petition with the District Court.

Petitioner filed this action on July 23, 2010. (Doc. 1). He filed his Amended Petition on August 4, 2010, and a motion for oral argument on April 6, 2011. (Doc. 9, 31).[2] In the amended petition, he claimed that he was denied due process of law by the closing statement of the prosecutor. (Doc. 9-1 at ii). In particular, he claims that A) the prosecutor's statement "inferred quantification of alcohol," B) the statement "was not based on trial testimony," C) the state ignored its promise not to introduce HGN evidence except as limited by *Lopresti*, D) the prosecutor intentionally only introduced testimony that HGN was evidence of "detoxification" and then argued that it was evidence of the opposite ("intoxication") in closing, and E) the prosecutor's statement lacked scientific basis because there is no scientific basis to equate HGN with "intoxication." (Doc. 9-1 at ii–iii). Petitioner also argues that adverse state court rulings violated his right to due process and that the errors were material. (Doc. 9-1 at iii). Although Petitioner puts forward five claims, they are closely related, and can be described adequately in merely two counts: 1) By describing the impact of a positive HGN test in terms exceeding the scope of *Lopresti* in his closing, the prosecutor violated Petitioner's right to due process (Petitioner's claims A, C, and E), and 2) by stating

---

[2] The motion for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

that Officer Butler testified that HGN could signify "intoxication," when in fact Officer Butler testified that it could signify "detoxification," the prosecutor violated Petitioner's due process rights (Petitioner's claims B and D). These claims will be discussed individually below.

Respondent argues that Petitioner's federal claim was not "fairly presented" in state court, and in the alternative that it lacks merit because "the prosecutor's argument was entirely proper." (Doc. 20 at 16).

## DISCUSSION

### 1. Legal Standard

#### A. AEDPA Generally

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court may not grant habeas relief unless either the petitioner has exhausted his claims in state court, there is an absence of available state corrective process to exhaust the claim, or circumstances exist which render the state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Nor may the Court grant habeas relief unless the state's adjudication of the claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1); *see Baldwin v. Reese*, 541 U.S. 27, 27 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). "The Supreme Court has said that § 2254(d)(1) imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state court decisions be given the benefit of the doubt.'" *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

Only those persons who are "in custody" may pursue habeas relief. The Supreme Court has found that those persons released on their own recognizance pending execution of a sentence are "in custody" for the purposes of the habeas statute. *See Hensley v. Municipal*

*Ct.*, 411 U.S. 345, 351 (1973).

## B. Fair Presentation

Before seeking a federal writ of habeas corpus, a state prisoner must give the state the opportunity to pass upon and correct the alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To provide the state with the necessary "opportunity," the prisoner "must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (citing *Duncan*, 513 U.S. at 365; *O'Sullivan*, 526 U.S. at 845). The prisoner does not "fairly present" a federal claim to the appropriate state court unless he "explicitly indicated" that "the claim was a *federal* one." *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001) (emphasis in original). A claim must not only reference the constitutional guarantee which has been violated, but must also include "a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 163 (1996). If a petitioner's state court actions contain only "conclusory scattershot citation of federal constitutional provisions, divorced from any articulated federal legal theory," he has not fairly presented the federal issue to state court. *Castillo v. McFadden*, 399 F.3d 993, 1002 (9th Cir. 2005).

If a claim has not been fairly presented in state court, the claim is said to be procedurally defaulted if state court procedural rules are such that bringing the case back to state court would be "futile." *Teague v. Lane*, 489 U.S. 288, 297–99 (1989). If a claim is procedurally defaulted, it is not available for habeas review absent either "cause and prejudice" or "a fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393–94 (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

## 2. Analysis

All parties agree that Petitioner is "in custody" for the purposes of the habeas corpus statute, and that his petition was timely under the 1-year statute of limitations in AEDPA. (Doc. 20 at 5).

## A. Fair Presentation

The bulk of Petitioner's post-conviction litigation relies on application of *Lopresti*. His discussion of federal law is minimal, but does include a citation to *Berger*, for the proposition that due process rights may be violated by the acts of overzealous prosecutors. (Doc. 20, Ex. E at 8). Besides the citation to *Berger* and the claim of prosecutorial misconduct, the state appeal contains only "conclusory, scattershot citation of federal constitutional provisions." *Castillo*, 399 F.3d at 1002. No other federal claims, therefore, were fairly presented in state court.[3]

In his initial appeal, Petitioner discussed the fact that the prosecutor's closing statement exceeded the bounds of what testimony may be elicited regarding HGN under *Lopresti*. He did not, however, mention that Officer Butler had used the word "detoxification" while the prosecutor used the word "intoxication" in closing. (Doc. 20, Ex. E). Therefore, only Claim One (Petitioner's claims A, C, and E) was fairly presented to the appeals court. Petitioner did not include "a statement of the facts that entitle the petitioner to relief" on Claim Two (Petitioner's claims B and D), namely that the prosecutor's closing was diametrically opposed to the testimony at trial. *Gray*, 518 U.S. at 163

Petitioner did make such a factual statement regarding Claim Two in his petition for a special action to the Court of Appeals. In that petition, he wrote, "the State elicited testimony from the arresting Officer that six cues of HGN could mean 'detoxification,' . . . [but] [t]he Officer did not mention intoxication or alcohol impairment as a cause of HGN." (Doc. 20, Ex. I at 7). He cited *Berger* for the proposition that a prosecutor may not make statements in closing that directly contradict evidence in the record, and wrote that "[t]he argument of the prosecutor was not based on evidence in the record." (*Id.* at 12, 14). In the traditional setting, a prisoner may "fairly present" a federal claim by filing a collateral action in state court challenging the conviction on federal grounds, whether or not he presented that claim to a state appeals court. *Wade v. Mayo*, 334 U.S. 672, 677–78 (1948) ("The fact that

---

[3] For example, to the extent that Petitioner's Claim E argues that state court rulings on the presentation of scientific evidence may violate the due process clause, the claim was not fairly presented in state court.

he might have appealed his conviction and made the same claim and received the same answer does not detract from the completeness from which Florida has disposed of his claim on habeas corpus."). Nevertheless, a motion for special proceeding after an appeal from the justice court to the superior court is not analogous to a state habeas petition filed after conviction in a superior court. The Court of Appeals accepts jurisdiction for a special action only when "there is no equally plain, speedy or adequate remedy available by appeal, . . . or when the case presents a narrow question of law of statewide importance." *State ex rel. Romley v. Superior Ct.*, 198 Ariz. 164, 165–66, 7 P.3d 970, 971–72 (App. 2000). A claim is not "fairly presented" when "the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

Petitioner never fairly presented Claim Two (Petitioner's claims B and D) in state court, and it has therefore not been exhausted. He is time-barred from returning to state court, and therefore has procedurally defaulted on the claim. He makes no claim, nor are there grounds to find, that he defaulted through cause and prejudice, or that failure to provide habeas review would result in a fundamental miscarriage of justice.

**B.    Merits**

Petitioner periodically argues that the prosecutor's actions violated state law. For example, Petitioner asserts that the prosecutor violated the dictates of *Lopresti* by using the terms "intoxicated" and "impaired" in his closing when the standard only allows HGN evidence to be admitted "for the purpose of permitting the officer to testify that, based on his training and experience, the results indicated possible neurological dysfunction, one cause of which could be alcohol ingestion." *Lopresti*, 165 Ariz. at 518–19. To the extent that Petitioner argues that the state court misinterpreted state law by permitting the prosecutor to make the statements without providing a curative instruction, this Court is without power to question state court adjudications of state law. *See Estelle v. McGuire*, 502 U.S. 62, 71–72, (1991).

Petitioner's sole federal claims are that the closing argument violated his due process

- 10 -

rights because it exceeded the bounds set by *Lopresti* regarding testimony, and because it grossly misrepresented the testimony that had in fact been given. Although only the first of these was fairly presented, both claims would fail on the merits.

The test for prosecutorial misconduct has been significantly refined in the nearly seventy years since the Supreme Court decided *Berger v. United States*, 295 U.S. 78, 88 (1935). By current standards, improper statements by prosecutors in closings only violate due process when they "infect[] the trial with unfairness." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). A prosecutor's closing statement, even if inflammatory, did not amount to a constitutional depravation when it "did not manipulate or misstate the evidence." *Darden v. Wainwright*, 477 U.S. 168, 182 (1986).

Petitioner's claim that the prosecutor's statement so exceeded the bounds of *Lopresti* as to violate due process fails. *Lopresti* governs only what testimony may be elicited, and in their closing arguments prosecutors may discuss the "reasonable inferences" that may be drawn from the testimony. *Menendez v. Terhune*, 422 F.3d 1012, 1034, 1037 (9th Cir. 2005) (no prosecutorial misconduct when a prosecutor, in closing "merely presented his view of the evidence," where evidence had been admitted that supported differing propositions). Although Petitioner is correct that "ingestion" of alcohol does not necessarily imply "impairment" or "intoxication," it is a reasonable inference to describe neurological dysfunction possibly caused by the ingestion of alcohol as "intoxication." The jury was instructed that statements by the attorneys "are not evidence." (Doc. 20, Ex. S at 82). The prosecutor's statement was well within the bounds permitted under governing federal law.

Petitioner's argument that the prosecutor denied him due process when the prosecutor said HGN could be caused by "intoxication" when Officer Butler testified in his direct examination only that it could be evidence of "detoxification," likewise fails. (Doc. 9-1 at 17–18). Officer Butler's testimony was not limited to direct examination. During Officer Butler's cross-examination, Petitioner's attorney recited the *Lopresti* standard nearly word for word, and asked Officer Butler if it was an accurate description of a positive test for HGN. (Doc. 20, Ex. S at 133). Officer Butler answered, "that is a correct statement." (*Id.*).

In his closing, the prosecutor did not state that he was referring solely to the officer's direct examination. (Doc. 20, Ex. S at 194, 196) ("the officer you heard testify"; "as you heard testified to by the officers"). Officer Butler had in fact testified as to what a positive HGN test showed in accordance to *Lopresti*; he merely had done so during cross-examination. Given the fact that he had testified that the HGN test "might indicate a possible neurological dysfunction, one cause of which could be alcohol ingestion," the prosecutor's closing statement did no more than ask the jury to draw "reasonable inferences" from the officer's testimony. (Doc. 20, Ex. S at 133); *Menendez*, 422 F.3d at 1037. The prosecutor's statements, while at odds with the direct testimony, "did not manipulate or misstate the evidence" when the officer's testimony is considered as a whole. *Darden v. Wainwright*, 477 U.S. 168, 182 (1986).

The petition is therefore denied.

## CONCLUSION

The petition is properly read as presenting two federal claims, one that the prosecutor violated due process because his closing statement exceeded the language of *Lopresti* and one that it mischaracterized the actual testimony. Only the first was fairly presented in state court.

The fairly presented claim fails on the merits, and the claim that was not fairly presented would have been denied had it been fairly presented. The prosecutor merely asked the jury to draw reasonable inferences from the testimony presented. To the extent that the prosecutor's summary mischaracterized the officer's statements in direct examination, they represented a fair representation of the officer's statements under cross-examination.

Although the grounds for the Court's conclusions are slightly different than those detailed in the R&R, the Court adopts the conclusions of the R&R both as to exhaustion and the merits, and therefore accepts the R&R.

**IT IS THEREFORE ORDERED:**

1.      The Amended Petition for Writ of Habeas Corpus (Doc. 9) is **denied**.

2.      The Motion for Hearing or Conference re: Oral Argument (Doc. 31) is **denied**.

3. Judge Anderson's Report and Recommendation (Doc. 36) is **accepted**.

4. The Clerk of Court shall **terminate this action**.

5. Since the Court ruled on the merits of the constitutional claim as well as the procedural issue, it declines to issue a Certificate of Appeal (COA) because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

DATED this 13th day of February, 2012.

G. Murray Snow
United States District Judge